UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL DALE STINNETT, | 1:09-cv-00775 MJS HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| MIKE MCDONALD, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both he and Respondent have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 11, 16.)

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On February 27, 2007, Petitioner pled guilty to burglary, participation in a criminal street gang, using a firearm and inflicting great bodily injury. The facts of the case are derived from the unpublished opinion of the California Court of Appeal:[1]

> At 2:20am on February 14, 2006, Hanford Police Officer Pontecorvo was dispatched to investigate a shooting in Hanford. Pontecorvo met the victim, Trenton Wells, at Hanford Community Medical Center. Wells told Pontecorvo he was awakened when his bedroom door was kicked in. Wells believes three or four people began hitting him. One attacker struck Wells in the head with a gun.

---

[1] The Fifth District Court of Appeal's summary of the facts in its March 13, 2009 opinion is presumed correct.  28 U.S.C. §§ 2254(e)(1).

Wells began to fight back because he believed the assailants were trying to kill him.

Wells was able to exit his room into the living room, where the fight continued. The assailants were trying to tie Wells with tape. Wells attempted to exit the front door but more than one assailant continued to fight with Wells. Wells was able to unlock the front door, but could not open it. Wells was then shot. The fight continued into a roommate's bedroom. Wells opened a sliding door and went into the backyard. The assailants did not follow him. After 10 minutes, Wells went back into his residence and called his parents to take him to the hospital. Another officer told Pontecorvo Wells had been shot three times, twice in the right arm and once in the left shoulder.

Wells described the gun as eight to nine inches long and looked like a .45 caliber. As the assailants were attacking Wells, they demanded to know where he kept his money. Wells told them he had no money. Wells heard two more gunshots and thought one of the assailants had been shot. Wells heard a suspect say he thought the safety to the gun was on. Another suspect said, "Let's kill the mother fucker." Wells remembered the assailants wore white shoes.

People v. Stinnett, No. F052845, 2008 Cal. App. Unpub. WL 589172 at *1-2 (Cal. App. 5th Dist., March 5, 2008).

At the plea hearing the court explained the plea agreement as:

THE COURT: The defendants will be pleading guilty to a charge of a felony first degree burglary, violation of Section 459, which is punishable by a possible prison sentence of two, four or six years; a felony violation of Section 12022.5, which is an enhancement which carries a consecutive sentence of three, four or ten years; a felony violation of Section 12022.7 of the Penal Code which is an enhancement that carries the sentence of an additional three years; and a felony violation of Section 186.22(A) of the Penal Code which carries a possible sentence of 16 months, two years or three years. Furthermore, there's a stipulation and agreement that the sentence each defendant would receive would be either a sentence of 11 years 8 months in prison, which would consist of the middle term on the burglary, the middle term on the firearm enhancement, and the three-year term on the great bodily injury enhancement plus an eight-month consecutive term on the 185.22 charge for 11 years and eight months, or they would receive a sentence of 13 years in prison, which would be the upper term of the six years on the burglary plus the mid-term four years on the firearm enhancement and the three-year term on the great bodily injury, and a concurrent sentence on the 186.22(A) violation.

It's further my understanding that the Court would be selecting the upper term or the midterm on the burglary charge based on either information presented to the Court at the time of sentencing in the probation officer's report or other information presented to Court at the sentencing hearing after a statement in mitigation or mitigation notice of aggravating and mitigating circumstances that are given; that the defendants are giving up their right to a jury trial on the issue of aggravating circumstances justifying the upper term. . . .Mr. Stinnett, did you understand

THE DEFENDANT STINNETT: Yes, sir.

1  THE COURT: Do you understand everything that was said about it?

2  THE DEFENDANT STINNETT: Yes, sir.

3  THE COURT: And is that what you're agreeing to in the case?

4  THE DEFENDANT STINNETT: Yes, sir.

5  . . . .

6  THE COURT: [You] each have the right to a speedy and public trial . . . Mr. Stinnett, do you understand that right?

7  THE DEFENDANT STINNETT: Yes

8  THE COURT: Do you give up that right?

9  THE DEFENDANT STINNETT: Yes.

10

11  THE COURT: You each have the right to a jury trial not just on the charges that you're pleading guilty to, but also on the issue of whether there are aggravating circumstances that would make the upper term of the burglary charge

12  appropriate. . . Mr. Stinnett, do you understand that right?

13  THE DEFENDANT STINNETT: Yes.

14  THE COURT: Do you know what a jury trial is?

15  THE DEFENDANT STINNETT: Yes, sir.

16  THE COURT: Do you give up your right to a jury trial?

17  THE DEFENDANT STINNETT: Yes.

18  (Lodged Doc. 5, Rept'rs Tr. ("RT") pp. 70-78.)

19  On March 29, 2007, Petitioner was sentenced to thirteen years in state prison. (RT at

20  133-34.) The court found that the aggravating circumstances, including Petitioner's numerous

21  prior convictions and juvenile petitions, outweighed any mitigating circumstances and

22  sentenced Petitioner to the upper term of six years for the burglary charge. Further, Petitioner

23  was sentenced to a consecutive term of four years for using a firearm, a consecutive term of

24  three years for inflicting great bodily injury, and a concurrent term of two years for participation

25  in a criminal street gang. The court allowed Petitioner to earn work credits to reduce his time

26  in prison by up to 15 percent. Accordingly, Petitioner's good time credits were calculated at 15

27  percent at his sentencing. Petitioner made no objections. (Id. at 126-128.)

28  Petitioner directly appealed his sentence to the California Court of Appeal, Fifth

Appellate District. The court affirmed the lower court's judgment on March 5, 2008. (Lodged Doc. 2.) Petitioner then petitioned the California Supreme Court for review. Review was denied on May 21, 2008. (Lodged Docs. 3-4.) On April 20, 2009, Petitioner filed the instant writ of habeas petition. (Pet., ECF No. 1.) Respondent filed an answer on July 8, 2010. (Answer, ECF No. 21.)

## II.  DISCUSSION

### A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner's claims involve those guaranteed by the U.S. Constitution and arise from the Kings County Superior Court of California, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.  Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and so is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable

>determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405 06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70 71 (2003). A state court decision will involve an "unreasonable application of "federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409 10); Woodford v. Visciotti, 537 U.S. 19, 24 25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an incorrect application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case by case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."

Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting Richter, 131 S. Ct. at 786).

### 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784 85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786 87. The Court then explains the rationale for this rule, i.e., "that state courts are the

U.S. District Court
E. D. California
-6-

principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121 22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

## III. REVIEW OF PETITION

Petitioner's claims challenge his underlying plea and the constitutionality of his sentence.

### A. Claim One: Breach of the Plea Agreement

Petitioner challenges his underlying plea based on his allegations that he received conduct credit at a lower rate than he was promised, suffered from ineffective counsel, and endured vindictiveness on part of the district attorney. Respondent argues that Petitioner's claim is procedurally barred because Petitioner failed to obtain a certificate of probable cause from the trial court.

The California Court of Appeal refused to address the merits of Petitioner's claim, because Petitioner failed to obtain a certificate of probable cause from the trial court:

> We initially note that appellant failed to obtain a certificate of probable cause from the trial court's initial pronouncement of judgment. We therefore cannot review any potential infirmities concerning the validity of the underlying no contest plea. (*People v. Mendez* (1999) 19 Cal.4th 1084; *People v. Panizzon* (1996) 14 Cal.4th 68.)

People v. Stinnett, No. F052845, 2008 Cal. App. Unpub. WL 589172 at *2 (Cal. App. 5th Dist., March 5, 2008).

### 1. Procedural Default

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); King v. LaMarque, 464 F.3d 963, 965 (9th Cir.2006). "[T]he procedural default doctrine is a specific application of the general adequate and independent state grounds doctrine." Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir.1994); Fields v. Calderon, 125 F.3d 757, 761-62 (9th Cir.1997). The procedural default doctrine "bar[s] federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman, 501 U.S. at 729-30. A state procedural rule is considered an independent bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling. Ake v. Oklahoma, 470 U.S. 68, 75 (1985). A state procedural rule constitutes an adequate bar to federal court review if it was "firmly established and regularly followed" at the time the state court applied it. Ford v. Georgia, 498 U.S. 411, 423-24; King, 464 F.3d at 965; see also Townsend v. Knowles, 562 F.3d 1200, 1207 (9th Cir.2009) ("To be adequate, a state procedural rule must be 'well-established and consistently applied.' " (quoting Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.2003), abrogated on other grounds by Walker v. Martin, 131 S. Ct. 1120, 179 L. Ed. 2d 62 (2011)).

"A procedural rule can be neither well-established nor consistently applied if it is not 'clear and certain.'" Townsend, 562 F.3d at 1207 (quoting King, 464 F.3d at 965) ). Moreover, "[t]o constitute a procedural bar, the state's rule had to be independent and adequate at the time [petitioner] purportedly failed to comply with it." Townsend, 562 F.3d at 1206.

Procedural default is an affirmative defense, Gray v. Netherland, 518 U.S. 152, 165-66

(1996); Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir.2005), "and the state has the burden of showing that the default constitutes an adequate and independent ground." Insyxiengmay, 403 F.3d at 665-66; Bennett, 322 F.3d at 585.

Here, Respondent raises the affirmative defense that Petitioner's claim challenging his underlying plea is procedurally barred due to Petitioner's failure to obtain a certificate of probable cause. Respondent has made a sufficient showing that the default constitutes an adequate and independent ground by pleading that this claim is procedurally defaulted pursuant to the rule contained in California Penal Code § 1237.5, which requires that a defendant obtain a certificate of probable cause when appealing from a guilty plea.

Accordingly, the burden shifts to Petitioner to place the adequacy of the rule requiring a certificate of probable cause into question as "the scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner." Bennett, 322 F.3d at 584-85. Petitioner "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." Bennett, 322 F.3d at 586. The burden then shifts back to the government, and it bears "the ultimate burden of proving the adequacy" of the relied-upon ground. King, 464 F.3d at 966-67 (quoting Bennett, 322 F.3d at 585-86). "In most circumstances, the best method for petitioners to place the defense in issue is to assert 'specific factual allegations that demonstrate the inadequacy of the state procedure' by citing relevant cases." King, 464 F .3d at 967; Bennett, 322 F.3d at 586. If, however, a state procedural rule has previously been found inadequate, "petitioners may fulfill their burden under Bennett by simply challenging the adequacy of the procedure; the burden then shifts back to the government to demonstrate that the law has subsequently become adequate." King, 464 F.3d at 967.

Here, Petitioner did not reply to Respondent's answer; therefore, there are no "specific allegations by the Petitioner as to the adequacy of the state procedure." Bennett, 322 F.3d at 584-85. Petitioner has failed to satisfy his burden under Bennett. However, even if Petitioner had replied, this Court concludes that the procedural rule rests on an adequate and

independent state procedural ground. See Strong v. Sullivan, 265 Fed. Appx. 489, 490 (9th Cir. 2008)[2]; see also Francis v. Cate, 2010 WL 1659062 (E.D. Cal. 2010) (section 1237.5 constitutes procedural bar); Rodriguez v. Hernandez, 2009 WL 2525444, 2009 U.S. Dist. LEXIS 72999 (S.D. Cal. 2009) (same).[3] As the application of California Penal Code § 1237.5 does not depend on any federal law, it is independent for purposes of procedural default analysis. See Vang v. Nevada, 329 F.3d 1069, 1074-75 (9th Cir. 2003). Section 1237.5 is also adequate for the purposes of imposing a procedural bar, as it is firmly established by statute, and applied consistently by California's appellate courts. People v. Mendez, 19 Cal.4th 1084 (1999); see also People v. Panizzon, 13 Cal.4th 68, 79 (1996) (California Penal Code § 1237.5 does not allow the reviewing court to hear the merits of issues going to the validity of the plea unless the defendant obtains a certificate of probable cause, or seeks and obtains relief from default in the reviewing court); People v. Cuevas, 44 Cal.4th 374, 379 (2008) (same); People v. Shelton, 37 Cal.4th 759, 766 (2006) (same). Consequently, a federal habeas court is barred from reviewing petitioner's claim unless Petitioner can demonstrate cause and actual prejudice, or that failure to review petitioner's claims is necessary to avoiding a miscarriage of justice. Coleman, 501 U.S. at 725.

If there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner demonstrates: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. Harris v. Reed, 489 U.S. 255, 262 (1989). The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

---

[2] Ninth Circuit Rule 36-3(b) provides: "Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1." However, Ninth Circuit Rule 36-3(a) provides: "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."

[3] But see Bean v. Tilton, 2009 WL 1699659 (E.D. Cal. 2009) (California Penal Code Section 1237.5 is not an adequate state procedural bar to a claim under Blakely v. Washington, 542 U.S. 296 (2004) and Cunningham v. California, 549 U.S. 270 (2007)). However, in the instant order, Petitioner's claim under Cunningham is addressed on the merits below.

McCleskey v. Zant, 499 U.S. 467, 493-94 (1991). Examples of cause include showings "that the factual or legal basis for a claim was not reasonably available to counsel," "that some interference by officials made compliance impracticable," or "of ineffective assistance of counsel." Murray v. Carrier, 477 U.S. 478, 488 (1986). Prejudice is difficult to demonstrate:

> The showing of prejudice required under Wainwright v. Sykes is significantly greater than that necessary under "the more vague inquiry suggested by the words 'plain error.'" Engle, 456 U.S. at 135, 102 S.Ct. at 1575; Frady, supra, 456 U.S. at 166, 102 S .Ct. at 1593. See also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). The habeas petitioner must show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, supra, at 170, 102 S.Ct. at 1596.

Murray, 477 U.S. at 493-94. Ultimately, the question is whether the prejudice is sufficient to have undermined the reviewer's confidence in the result of the trial.

As noted above, Petitioner did not file a traverse or a reply. Petitioner has failed to demonstrate cause or prejudice as a result of the alleged violation of federal law. Even if Petitioner had established cause, this Court finds that Petitioner did not suffer prejudice arising from the failure to obtain a certificate of probable cause. The information filed on June 28, 2006, charged Petitioner with four separate felony counts, including attempted murder, along with various enhancements. (Lodged Doc. 5, Clerk's Tr. pp. 14-17.) The plea agreement provided for a guilty plea to two felony counts and two enhancements for a stipulated sentence of no more than 13 years. The attempted murder charge was dropped. In light of the multiple and serious charges Petitioner faced, as compared with the reduced charges negotiated through the plea agreement, this Court cannot find it likely that the outcome of this case would have been different if Petitioner had been granted a certificate of probable cause and the claim reviewed on the merits by the state court.

"Even if a state prisoner cannot meet the cause and prejudice standard, a federal court may hear the merits of [a defaulted claim] if the failure to hear the claim[s] would constitute a 'miscarriage of justice.'" Sawyer v. Whitley, 505 U.S. 333, 339 (1992); see also Schlup v. Delo, 513 U.S. 298, 321 (1995) (reiterating exception for fundamental miscarriage of justice but noting that exception is explicitly tied to petitioner's innocence). Thus, to qualify for this

exception to the procedural default rule, petitioner must show he was "actually innocent" of the offense. Cook v. Schriro, 538 F.3d 1000, 1028 (9th Cir.2008) (quoting Murray, 477 U.S. at 496). Here, Petitioner does not claim actual innocence; rather, he alleges that he was deprived of ineffective counsel, promised a higher good-time credit calculation, and suffered vindictiveness on part of the district attorney. Consequently, Petitioner is not entitled to this exception. Without presenting reliable, credible evidence of his innocence, Petitioner has not made a sufficient showing of actual innocence to serve as an equitable exception to procedural default. Schlup, 513 U.S. at 324. Petitioner has not shown that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt had counsel not recommended Petitioner to testify, or that the Court cannot have confidence in the outcome of the trial due to the errors of counsel. Id. at 314-15.

For the reasons set forth above, Petitioner's claim challenging his underlying plea is procedurally defaulted. Federal review of this claim is foreclosed. Further, while Petitioner alludes to claims of ineffectiveness of trial counsel and vindictiveness of the prosecution with regard to the present claim, he provides no factual and legal assertions to support such claims. The claims are insufficiently plead, and as they relate to Petitioner's plea, the claims are procedurally barred for the reasons provided above.

### 2. Merits

Even if the claim was not procedurally barred, the claim is without merit. Petitioner claims that he was promised that he was to receive 50% good-time credit, rather than 15% good-time credit on sentence. (Pet. at 5.) The trial court stated that the plea agreement stipulated either a 11-year 8-month or a 13-year prison sentence depending on whether the court imposed the middle or upper term on the burglary conviction. (Clerk's Tr. at 70-71.) Petitioner understood those to be the terms of the agreement. (Id. at 72.) The court then specifically asked Petitioner, "Other than what's been stated in open court, Mr. Stinnett, have there been any promises made to you to get you to plead guilty?" (Id. at 74.) Petitioner replied, "No, no, sir." (Id.) Further, Petitioner's pre-sentence conduct credit was calculated at 15 percent. (Id. at128.) Petitioner did not object. The record does not support Petitioner's claim

that he was promised 50% good-time conduct credits. The trial court gave Petitioner the opportunity to include any additional promises that the court failed to include in the plea agreement, but Petitioner declined. (Id. at 74.) In short, Petitioner has not provided any evidence of a promised 50% conduct credit. Petitioner's claim lacks merit.

### B.    Claim Two: Cunningham Error

Petitioner claims that the trial court's imposition of the upper-term of six years on the burglary count violated his Sixth Amendment right to a jury trial. This claim is without merit.

#### 1.    State Court Opinion

The last reasoned state court decision is from the California Court of Appeal, Fifth Appellate District Court's March 5, 2008 decision confirming Petitioner's conviction. The court explained:

> Appellant's counsel attached a sentence at page four of his opening brief stating that "[a]ppellant personally requests" that this court address the issue of whether *Cunningham v. California* (2007) 549 U.S. __, [127 S.Ct. 856] "requires reduction of the upper term or any enhancement applied to his sentence." Prior to challenging his plea, the trial court expressly advised appellant that he was waiving the right to a jury trial on any fact which might be used to impose an upper term sentence. Appellant expressly waived his right to a jury trial in open court after receiving the trial court's advisement.
>
> As with other constitutional rights such as his *Boykin/Tahl* rights, appellant could waive a constitutional right to a jury trial on the truth of any fact applied by the trial court to impose the upper sentence on count three. (*See People v. Collins* (2001) 26 Cal.4th 297, 307-308 [certain constitutional rights must be personally waived by the defendant]; *People v. Anderson* (1991) 1 Cal.App.4th 318, 323-325 [waiver of fundamental right should be express and appear on record].) Because the trial court explained to appellant his constitutional right to a jury finding on the truth of facts which could be used to impose an upper term and obtained a personal wavier of that right from appellant, the court did not commit Cunningham error in sentencing appellant to the upper term on count three.
>
> We further note that the probation officer found only one mitigating factor, that appellant admitted wrongdoing at a relatively early stage. The probation officer noted several aggravating factors: the crime involved great violence; the victim suffered great bodily harm; there were acts indicating a high degree of cruelty, viciousness, or callousness; the victim was particularly vulnerable; the appellant was convicted of other crimes for which consecutive sentences were being imposed but for which appellant was serving a concurrent sentence; the perpetration of the crime showed planning, sophistication, or professionalism; the appellant engaged in dangerous conduct indicating a serious danger to society; appellant's prior convictions as an adult or sustained petitioner is juvenile delinquency proceedings are numerous or of increasing seriousness; appellant was on probation when he committed the instant offenses; and

>appellant's prior performance on probation or parole was unsatisfactory
>
>>FOOTNOTE 4: Appellant had a misdemeanor battery and a possession of marijuana for sale adjudications in 1998 as a juvenile. As an adult, appellant had convictions in 2001 for resisting arrest and carrying a concealed weapon in a vehicle, a misdemeanor; misdemeanor convictions in 2003 for fighting in public and making terrorist threats; a drunk driving conviction in 2005; felony convictions in 2006 for burglary, participation in a criminal street gang, personally using a firearm, and causing great bodily injury. Appellant's criminal history is an aggravating factor for which a factual finding by a jury is not necessary. (*See People v. Black,* (2007) 41 Cal.4th 799, 818-820.)
>
>Appellant's sentence for the section 12022.5, subdivision (a) enhancement was four years, the midterm for that enhancement. The sentence for the great bodily injury enhancement in section 12022.7, subdivision (b) is a straight term of three years. The trial court did not commit *Cunningham* error in the imposition of enhancements to appellant's sentence.

People v. Stinnett, No. F052845, 2008 Cal. App. Unpub. WL 589172 at *3 (Cal. App. 5th Dist., March 5, 2008).

### 2. Legal Standard

In a line of cases beginning with Apprendi v. New Jersey, 530 U.S. 466 (2000), the United States Supreme Court addressed the effect of various states' sentencing schemes, including California's determinate sentencing law, on a defendant's right to have a jury determine the facts a trial court considers when imposing a sentence. In Apprendi, the Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Following Apprendi, the United States Supreme Court decided Blakely v. Washington, 542 U.S. 296 (2004). In Blakely, the high court explained that the statutory maximum for Apprendi purposes "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at 303.

The Supreme Court has clearly stated, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Under this rule, the Court later concluded that California's determinate

sentencing scheme did not stand up against the Sixth Amendment because it authorized the judge, rather than the jury, to find facts permitting an upper-term sentence. See Cunningham v. California, 549 U.S. 270, 288 (2007).

However, sentencing errors must withstand harmless error review which requires the Defendant to show prejudice. See Washington v. Recuenco, 548 U.S. 212, 215 (2006) (sentencing error requires showing of prejudice); Estrella v. Ollison, 668 F.3d 593, 598 (9th Cir. 2011) (same). On habeas review, it must be determined if the error had a substantial and injurious effect or influence on the sentence. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Using that standard, relief must be granted if there is grave doubt that a jury would have found the relevant aggravating factor beyond a reasonable doubt. Estrella, 668 F.3d at 598.

3.   Analysis

Under these circumstances, it simply cannot be said that Petitioner was prejudiced from the trial court's alleged failure to submit aggravating sentencing factors to the jury. The court explicitly informed Petitioner that he could either be sentenced to 11 years 8 months or 13 years depending on whether the court chose the middle or upper term of the burglary charge. Petitioner stated in open court that he understood the plea agreement and wanted to accept it. Petitioner further explicitly waived his jury trial on all charges and the aggravating circumstances that would warrant the upper-term of the burglary charge. At sentencing, the trial court cited circumstances under California Rule of Court 4.421 that justified the imposition of the upper-term sentence for the burglary charge. Specifically, the court noted Petitioner's numerous prior convictions as an adult and petitions in juvenile delinquency proceeding. (Rptr's Tr. at 126.) Even if Petitioner did not waive his right to a jury trial, the prior convictions alone justify the upper-term sentence and need not be submitted to the jury. See Apprendi, 530 U.S. at 490. Thus, Petitioner's claim, is without merit and he is not entitled to federal habeas relief.

///

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) Petitioner's petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (in order to obtain a COA, petitioner must show: (1) that jurists of reason would find it debatable whether the petition stated a valid claim of a denial of a constitutional right; and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack, 529 U.S. at 484. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:     August 8, 2012                    /s/ *Michael J. Seng*
                                             UNITED STATES MAGISTRATE JUDGE